UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Roshdy Mikhael,

                *Plaintiff*,

  -against-

SMG Automotive Holdings LLC d/b/a,
Brooklyn Chrysler Jeep Dodge Ram,
Stellantis North America, Inc., and
STK Logistics Inc. d/b/a STK Auto,

                *Defendants*.
-----------------------------------------------------------X

25 Civ. 6379

**Complaint
(Jury Trial
Demanded)**

## COMPLAINT

As and for his complaint in the above-captioned action, plaintiff Roshdy Mikhael, by his attorneys Kasell Law Firm, alleges as follows.

## PARTIES

1. At all times relevant, plaintiff Roshdy Mikhael was and is an individual residing in Richmond County, New York.

2. Defendant SMG Automotive Holdings LLC ("Dealer") is a limited liability company formed under the laws of New York on September 19, 2016, with DOS ID 5010536 that does business under the name "Brooklyn Chrysler Jeep Dodge Ram" which is Assumed Name ID # 538010. Dealer is a motor vehicle dealer with its principal place of business at 2286 Flatbush Avenue, Brooklyn, New York 11224. Dealer sells and leases new motor vehicles to consumers in New York.

3. Defendant Stellantis North America, Inc. ("Manufacturer") is a foreign corporation authorized to do business in New York and engaged in the manufacture, distribution, and sale of Dodge motor vehicles, including the 2024 Dodge Charger at

1

issue in this action. The headquarters address of Stellantis North America, Inc. is 1000 Chrysler Drive, Auburn Hills, Michigan 48326-2766.

4. Defendant STK Logistics Inc. is a corporation formed under the laws of New York on July 17, 2023, with DOS ID 6938005 and does business under the name "STK Auto" which has Assumed Name ID # 766787.

5. STK Auto is a motor vehicle leasing and brokerage company with its principal place of business at 611 Midland Avenue, Staten Island, New York 10306. STK Auto owns and operates the website at https://stkautolease.com.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over plaintiff's federal claim under the Consumer Leasing Act, 15 U.S.C. § 1667d, pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

7. Plaintiff brings claims for actual damages, statutory damages, attorneys' fees, and costs against defendants for violations of the Consumer Leasing Act, Regulation M, 12 C.F.R. part 1013, and for related violations of New York General Business Law §§ 198-a, 349, and 396-p.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATUTORY FRAMEWORK

9. The Consumer Leasing Act ensures that lessees receive clear and accurate disclosures enabling meaningful comparison of lease terms with other

leases and credit transactions. The statute appears in the Consumer Credit Protection Act, 15 U.S.C. §§ 1667 *et seq*. The implementing regulations, Regulation M, are codified at 12 C.F.R. part 1013.

## BACKGROUND

10. On or about July 3, 2025, plaintiff leased from Dealer a new 2024 Dodge Charger Daytona, Vehicle Identification Number 2C3CDBCK1RR202301, referred to herein as the Vehicle.

11. Plaintiff paid $4,000 at the time of the lease transaction.

12. STK Auto issued plaintiff a receipt confirming that the $4,000 constituted a down payment. A copy of this invoice is attached as **Exhibit A**.

13. The $4,000 down payment was never credited on the face of the lease in violation of the Consumer Leasing Act. A copy of the lease is attached as **Exhibit B**.

14. The lease reflects a capitalized cost reduction attributable solely to a rebate. Plaintiff's $4,000 down payment should have been included as part of the capitalized cost reduction.

15. Plaintiff was not informed that the Vehicle had sustained any prior damage or repairs prior to delivery.

16. On July 4, 2025, the day after delivery, plaintiff observed a blurry rearview camera image and immediately reported the issue to STK Auto. Plaintiff was instructed to bring the Vehicle in for service.

17. Later that month, plaintiff observed water intrusion in the rear tail lamps following a wash. The Vehicle then suffered a mechanical breakdown on August 30, 2025, and was taken to a Staten Island dealership for repairs.

18. On September 12, 2025, plaintiff was informed that the Vehicle was repaired and was advised for the first time that the trunk had been previously repaired.

19. Plaintiff retrieved the Vehicle on September 12, 2025, but the next morning the Vehicle again broke down and was returned to Dealer.

20. On November 2, 2025, plaintiff contacted Dealer for a status update and was told the Vehicle was fully repaired and that he would receive a call the next day to pick it up.

21. Dealer did not call on November 3, 2025. When plaintiff called himself, Dealer informed him that the Vehicle had broken down again.

22. The Vehicle has remained out of service since September 13, 2025, to the present.

23. Upon information and belief, the cost of pre-delivery repairs exceeded five percent of the Manufacturer's Suggested Retail Price. No defendant disclosed these repairs to plaintiff before the lease.

### CLAIM ONE
### Violation of the Consumer Leasing Act, 15 U.S.C. §§ 1667 *et seq.*, and Regulation M, 12 C.F.R. part 1013

24. Plaintiff repeats and realleges the foregoing allegations.

25. Dealer is a motor vehicle lessor engaged in regularly leasing vehicles to consumers for personal, family, or household use.

26. Plaintiff entered into a written motor vehicle lease with Dealer for the Vehicle on or about July 3, 2025.

27. The lease constituted a consumer lease under 15 U.S.C. § 1667(1) and 12 C.F.R. § 1013.2(e).

28. Regulation M required Dealer to provide accurate written disclosures of the total amount due at lease signing, the amount paid by the lessee, and the amount of any capitalized cost reduction.

29. Dealer violated the Consumer Leasing Act and Regulation M by failing to disclose and properly account for plaintiff's $4,000 down payment, and by misstating the capitalized cost reduction.

**CLAIM TWO**
**Violation of New York General Business Law § 198-a (New Car Lemon Law)**

30. Plaintiff repeats and realleges the foregoing allegations.

31. Under General Business Law § 198-a, Manufacturer warrants that new motor vehicles sold or leased in New York are free from material defects for two years or 18,000 miles, whichever occurs first.

32. The Vehicle developed substantial defects within the warranty period, including a defective rearview camera, recurring electrical issues, water intrusion, and repeated mechanical failures. These defects substantially impaired the Vehicle's use, value, and safety.

33. Manufacturer was afforded a reasonable number of opportunities to repair these defects but failed to do so. The Vehicle remains defective and unfit for ordinary use.

34. Plaintiff is entitled to a refund of all payments made, cancellation of the lease, incidental and consequential damages, and attorneys' fees.

## CLAIM THREE
### Violation of New York General Business Law § 396-p

35. Plaintiff repeats and realleges the foregoing allegations.

36. General Business Law § 396-p prohibits the sale or lease of a new motor vehicle that sustained damage requiring repairs exceeding five percent of the MSRP unless written disclosure of the damage and repairs is provided prior to the transaction.

37. STK Auto, Dealer, and Manufacturer knew or should have known that the Vehicle had sustained prior damage and been repaired at a cost exceeding five percent of MSRP.

38. None of the defendants provided plaintiff with the written disclosures mandated by § 396-p.

39. Defendants' failure to disclose the prior repairs violated § 396-p and entitles plaintiff to statutory remedies, including rescission and restitution.

## CLAIM FOUR
### Money Had and Received
### (against STK Auto only)

40. Plaintiff repeats and realleges the foregoing allegations.

41. A claim for money had and received requires that a defendant received money belonging to plaintiff, that defendant benefitted from its receipt, and that equity requires return of the funds.

42. STK Auto received plaintiff's $4,000.

43. STK Auto represented that these funds would be applied as a down payment under the lease.

44. STK Auto benefitted financially from the receipt of these funds.

45. Equity and good conscience require restitution because defendants retained the benefit without crediting the payment toward plaintiff's lease.

**WHEREFORE**, plaintiff Roshdy Mikhael respectfully demands a jury trial on all issues so triable under Rule 38 of the Federal Rules of Civil Procedure and demands judgment as follows:

As to Claims One, Two, and Three (Consumer Leasing Act, GBL § 198-a, and GBL § 396-p):

    (a) Refund of all monies paid under the lease.

    (b) Rescission of the lease agreement and return of the Vehicle.

    (c) Actual damages.

    (d) Incidental and consequential damages.

    (e) Statutory damages where applicable.

    (f) Attorneys' fees and costs.

    (g) Such other relief as the Court deems just and proper.

As to Claim Four (Money Had and Received, against STK Auto only):

    (h) Restitution of the $4,000 paid to STK Auto.

(i) Interest from the date of payment.

(j) Such other equitable relief as the Court deems just and proper.

DATED: Long Island City, New York
November 17, 2025

/s/ David Kasell
By: David M. Kasell
KASELL LAW FIRM
1038 Jackson Ave., #4
Long Island City, NY 11101
(718) 404-6668

# Exhibit A

# INVOICE

**STK Auto**
(864) 874-6141
611 Midland Ave
Staten Island, NY, 10306
US
https://stkautolease.com/home

**Billed to**
Mikhael Roshdy
(646) 280-0461
United States

**Invoice No**
INV-000265

**Issue Date**
July 3, 2025

**Due Date**
September 29, 2025

| ITEM NAME | PRICE | QTY | TAX | SUBTOTAL |
|---|---|---|---|---|
| Down Payment for 2024 Dodge Charger | $4,000.00 | 1 | - | $4,000.00 |

Subtotal $4,000.00

Amount Paid (USD) $4,000.00

**PAID**
(Completed on: September 29, 2025 03:57 PM)

**Terms & Notes:**

VIN: 2C3CDBCK1RR202301

2024 DODGE CHARGER

CASH PAYMENT

# Exhibit B

# LEASE ORDER AGREEMENT

**THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE DEALER AND THE LESSEE**

Date: 07/03/2025   CUST# 239441   NYC DCA Lic. # 2050540

| Lessee Name and Address | Co-Lessee Name and Address | Dealer Name and Address |
|---|---|---|
| ROSHDY GAMIL ROSHDY MIKHAEL<br>62 WOEHRLE AVENUE<br>ARDEN HEIGHTS, NY 10312<br><br>Email: SHOYAGAMIL@YAHOO.COM<br>Phone: (646) 280-0461<br>Cell: (646) 280-0461 | N/A<br><br><br><br>Email: N/A<br>Phone: N/A<br>Cell: N/A | BROOKLYN CDJR<br>2286 FLATBUSH AVE<br>BROOKLYN, NY 11234<br><br>Dealer Facility #: N/A<br>Salesperson: DIEGO KAPRIELIAN<br><br>Deal Number: 82800 |

I ORDER AND AGREE TO LEASE FROM YOU, ON THE TERMS CONTAINED ON ALL PAGES OF THIS AGREEMENT, THE FOLLOWING VEHICLE (READ ALL PAGES):

[X] NEW  [ ] USED  [ ] DEMO  [ ] CAR  [ ] TRUCK
[ ] WHOLESALE VEHICLE  [ ] JUNK VEHICLE

TO BE DELIVERED ON OR ABOUT  N/A

| Year | Make | Model | Type | Trim | Color | Mileage | Stock # |
|---|---|---|---|---|---|---|---|
| 2024 | DODGE | CHARGER DAYTONA | 2DR CAR | R/T | DIAMOND BLK CPC | 5 | 18678D |

IF THIS MOTOR VEHICLE IS CLASSIFIED AS A USED MOTOR VEHICLE, THE DEALER NAMED ABOVE CERTIFIES THAT THE ENTIRE VEHICLE IS IN CONDITION AND REPAIR TO RENDER, UNDER NORMAL USE, SATISFACTORY AND ADEQUATE SERVICE UPON THE PUBLIC HIGHWAY AT THE TIME OF DELIVERY. THE DEALER NAMED ABOVE FURTHER CERTIFIES THAT THIS VEHICLE COMPLIES WITH THE INFLATABLE RESTRAINT SYSTEM REQUIREMENTS FOUND IN SECTION 419-A OF NEW YORK STATE VEHICLE AND TRAFFIC LAW.

**Insurance Information.** You have arranged the following insurance on the Vehicle:

Insurance Company STATE FARM   Agent STATE FARM   Policy Number 2989878C2332B

| TRADE IN RECORD 1 | | | |
|---|---|---|---|
| YR. N/A | MAKE N/A | MODEL N/A | TYPE N/A |
| COLOR N/A | TRIM N/A | MILEAGE N/A | |
| VIN N/A | | | |
| TITLE NO. N/A | PLATE NO. N/A | EXP DATE N/A | |
| OWNER N/A | | LOAN # N/A | |
| LIENHOLDER N/A | | PHONE N/A | |
| ADDRESS N/A | | SPOKE WITH N/A | |
| AMOUNT N/A | GOOD TILL N/A | VERIFIED BY N/A | |

| TRADE IN RECORD 2 | | | |
|---|---|---|---|
| YR. N/A | MAKE N/A | MODEL N/A | TYPE N/A |
| COLOR N/A | TRIM N/A | MILEAGE N/A | |
| VIN N/A | | | |
| TITLE NO. N/A | PLATE NO. N/A | EXP DATE N/A | |
| OWNER N/A | | LOAN # N/A | |
| LIENHOLDER N/A | | PHONE N/A | |
| ADDRESS N/A | | SPOKE WITH N/A | |
| AMOUNT N/A | GOOD TILL N/A | VERIFIED BY N/A | |

VIN 2C3CDBCK1RR202301

| | | |
|---|---|---|
| CAPITALIZED COST $ | 63,297.31 | |
| (Your total cost of goods, services, & fees.) | | |
| Cash Price | $ | 60,127.84 |
| Delivery and Handling Charge* | $ | N/A |
| Dealer's optional fee for processing application for registration and/or certificate of title, and for securing special or distinctive plates (if applicable). THIS IS NOT A DMV FEE.* | | 175.00 |
| TIRE FEE | | 12.50 |
| REGISTRATION FEE | | 100.00 |
| INSPECTION FEE | | 10.00 |
| ACQUISITION FEE | | 995.00 |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| SALES TAX | | 1,876.97 |
| Total Capitalized Cost | $ | 63,297.31 |
| CAPITALIZED COST REDUCTION $ 12,500.00 | | |
| (Your total credits.) | | |
| Trade-In Allowance | $ | N/A |
| Cash Downpayment | $ | N/A |
| Rebate | $ | 12,500.00 |
| Other Credits | $ | N/A |
| NYS EV Rebate | $ | N/A |
| N/A | | N/A |
| Total Capitalized Cost Reduction | $ | 12,500.00 |
| ADJUSTED OR NET CAPITALIZED COST $ | $ | 50,797.31 |
| (Your net cost of goods, services, & fees.) | | |

*The *optional* dealer registration or title application processing fee ($175.00 maximum) and special plate processing fee ($5.00 maximum) are not New York State or Department of Motor Vehicles fees. Unless a lien is being recorded or the dealer issued number plates, you may submit your own application for registration and/or certificate of title or for a special or distinctive plate to any motor vehicle issuing office. The annual fees to be assessed by the Department for cost of the plate are $ 175.00.

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR A PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW FORM NO. LAWNY-LOA5522 © (Rev. 3/22)
© 2022 The Reynolds and Reynolds Company

Lessee Initials: R.M.   Co-Lessee Initials: N/A   Page 1 of 4

**SPECIAL NOTICE TO CONSUMER**

IF, UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, YOU SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE YOU MAY HAVE TRADED-IN (IF THE DEALER CHOOSES NOT TO RETURN IT TO YOU) SHALL NOT BE THE VALUE LISTED IN THIS DOCUMENT. INSTEAD, THE VALUE WILL BE DETERMINED BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION USED CAR GUIDE WHOLESALE VALUE OR OTHER GUIDE APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, NOT DEALER'S. ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. UNLESS DEALER FURNISHES LESSEE WITH A SEPARATE WRITTEN WARRANTY OR SERVICE CONTRACT MADE BY DEALER ON ITS OWN BEHALF, DEALER NEITHER ASSUMES NOR AUTHORIZES ANY PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF ANY PRODUCTS.

UNLESS DEALER MAKES A WRITTEN WARRANTY ON ITS OWN BEHALF OR ENTERS INTO A SERVICE CONTRACT WITHIN 90 DAYS OF THE LEASE AND DELIVERY OF THE VEHICLE THAT IS REFERRED TO IN THIS DOCUMENT, THE DEALER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, EXCEPT AS REQUIRED BY APPLICABLE LAW OR REGULATION. FURTHER, THERE ARE AND WILL BE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, EXCEPT AS MAY BE REQUIRED AND ARE MANDATORY UNDER LAW OR REGULATION. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT THE MANUFACTURER OR ANY SUPPLIER MAY PROVIDE.

LIMITATION OF DAMAGES: DEALER SHALL NOT BE LIABLE TO LESSEE FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, LOSS OF INCOME OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES, OR PUNITIVE DAMAGES. DEALER SHALL NOT BE RESPONSIBLE FOR THE LOSS OF OR DAMAGE TO LESSEE'S PERSONAL PROPERTY LEFT IN THE VEHICLE OR IN LESSEE'S TRADE-IN.

"NOTICE TO CONSUMER: IF THE VEHICLE IS NOT DELIVERED IN ACCORDANCE WITH THIS AGREEMENT WITHIN 30 DAYS AFTER THE ESTIMATED DELIVERY DATE AND THE DELAY IS NOT ATTRIBUTABLE TO YOU, YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT AND TO RECEIVE A FULL REFUND OF YOUR DEPOSIT."

PRIOR USE CERTIFICATION (required by Vehicle and Traffic Law 417-A if the principal prior use of the vehicle was as a police vehicle, taxicab, driver education, rental vehicle, or if the vehicle was repurchased under New York "lemon laws" or returned for nonconformity of its warranty). The principal prior use of the vehicle was as: a police vehicle __N/A__, a taxicab __N/A__, a driver education vehicle __N/A__, or a rented vehicle __N/A__. The vehicle was repurchased under New York "lemon laws" __N/A__; returned for nonconformity of its warranty __N/A__.

THE AMOUNT INDICATED ON THIS LEASE ORDER AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES DUE THE COMMISSIONER OF MOTOR VEHICLES. THE DEALER WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION AND TITLE, REFUND ANY AMOUNT OVERPAID FOR SUCH FEES.

LESSEE'S INITIALS: __R.M.__   DATE: __07/03/2025__

**A. Amount Due at Lease Signing or Delivery:**

| | | |
|---|---|---|
| 1. Capitalized cost reduction | $ | 12,500.00 |
| 2. Taxes on capitalized cost reduction | $ | N/A |
| 3. First monthly payment | $ | 438.96 |
| 4. Refundable security deposit | $ | N/A |
| 5. Acquisition Fee | $ | N/A |
| 6. Title fees | $ | N/A |
| 7. License and Registration fees (Estimate) | $ | N/A |
| 8. NYS DMV VERIFI fee | $ | N/A |
| 9. N/A | $ | N/A |
| 10. N/A | $ | N/A |
| 11. Sales/use tax | $ | N/A |
| 12. N/A | $ | N/A |
| 13. N/A | $ | N/A |
| 14. Total | $ | 12,938.96 |

**NEGATIVE EQUITY**

Lessee is aware the balance owed on Lessee's trade-in exceeds the trade-in allowance. Lessee understands that __0__ will be paid off on Lessee's behalf to __N/A__ and this amount is included when computing the "Total Capitalized Cost."

I certify that I took delivery of this vehicle on __07/03/2025__

Lessee's Initials: __R.M.__

TERMS OF PAYMENT OF BALANCE DUE: 24
[X] Lease Contract

LIENHOLDER __STELLANTIS FINANCIAL SERVICES, INC.__

---

For your protection, request a receipt for all payments you make.

This Agreement is not binding upon either Dealer or Lessee until signed by an authorized Dealer representative.

If Lessee is leasing this Vehicle in a lease transaction evidenced by a lease contract, this Agreement is binding when the lease is signed, but will not remain binding if a third party finance source does not agree to purchase the lease executed by Lessee and Dealer based on this Agreement on the terms as submitted. See paragraph 11 on page 3 of this Agreement, which shall survive the termination of this Agreement for any reason. Lessee acknowledges that he is eighteen years of age.

Lessee agrees that this Agreement includes all of the terms and conditions on all pages hereof, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises; together with any lease the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Agreement. Lessee, by signing this Agreement, acknowledges that Lessee has read and agrees to its terms and has received a true copy of this Agreement.

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this Lease Order, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Lessee Signs X __[signature]__   Co-Lessee Signs X __N/A__

LESSEE SIGNS X __[signature]__   DATE __07/03/2025__

CO-LESSEE SIGNS X __N/A__   DATE __N/A__

**MANAGER'S APPROVAL**
(Must Be Accepted By An Authorized Representative of the Dealer)

X __[signature]__   DATE __07/03/2025__

ILAW FORM NO. LAWNY-LOARB22   Lessee Initials __R.M.__   Co-Lessee Initials __N/A__   Page 2 of 4
© 2022 The Reynolds and Reynolds Company

## ADDITIONAL TERMS AND CONDITIONS

1. These definitions apply to this Agreement
   - "Agreement" means this Lease Order Agreement.
   - "Dealer", "us", "our" and "we" mean or refer to the authorized Dealer named on page 1 of this Agreement and who becomes a party to this Agreement by accepting it.
   - "Lessee" and "you" mean or refer to the party executing this Agreement as such.
   - "Manufacturer" means the corporation that manufactured the Vehicle.
   - "Trade-in" is the used vehicle that Lessee intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.
   - "Vehicle" is the vehicle or chassis that is the subject of this Agreement.

   We are not the Manufacturer's agent. You and we are the sole parties to this Agreement. References in this Agreement to Manufacturer are for the purpose of describing certain contractual relationships between the Manufacturer and us relating to new vehicles.

2. The Manufacturer may change our price of new vehicles without notice. If that happens with regard to new vehicles of the series and body type of the Vehicle before we deliver it to you, we may change the cash delivered price of the Vehicle to you accordingly. If we do, you may cancel this Agreement. If you cancel, we shall return any Trade-in to you, unless we have sold it. You agree to pay reasonable storage and repair charges. If we have sold the Trade-in, we shall pay you the Trade-in Allowance Value as indicated on page 1 of this Lease Agreement, less any expense in storing, insuring, conditioning or advertising it for sale, unless prohibited by law.

3. If you don't deliver your Trade-in to us until we deliver the Vehicle to you, we will reappraise the Trade-in at that time, subject to applicable law. The reappraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Agreement, you may cancel this Agreement. You must exercise your right to cancel before we deliver the Vehicle to you and you surrender the Trade-in to us.

4. Lessee shall give Dealer satisfactory evidence of title to any Trade-in upon delivery to Dealer. Lessee warrants any Trade-in to be Lessee's property, free and clear of all liens and encumbrances unless otherwise noted in this Agreement, and that the Trade-in has never had a salvage or "branded" title, been reconstructed, been a "lemon" vehicle, rebuilt, flooded or had major mechanical damage that caused the reconstruction of the Trade-in. Lessee further warrants that the airbags remain unused, the emissions system has been unaltered, and the trade-in has no other material defects. Lessee represents that the Trade-in's mileage shown in this Agreement is the actual mileage on the Trade-in. Lessee authorizes Dealer to rely on this representation in entering into this Agreement. If Lessee provides false information related to the Trade-in Lessee agrees to repurchase the Trade-in for the full allowance given to Lessee plus all costs incurred by Dealer in resolving the matter including but not limited to reconditioning costs, legal fees, court and collection costs.

5. If you fail or refuse to accept delivery of the Vehicle or comply with this Agreement, we may reimburse ourselves for any expenses and losses we incur or suffer as a result of your failure or refusal. This section doesn't apply if you cancel this Agreement under section 2 or 3.

6. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice and without obligation. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to us or being manufactured or sold in accordance with our orders. If the Manufacturer makes such a change, we have no obligation to you to make the same or any similar change in the Vehicle or its parts either before or after we deliver the Vehicle to you.

7. We aren't liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond our control or without our fault or negligence.

8. The Vehicle price includes reimbursement for Federal Excise taxes. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes based on sales volume, (federal, state or local) unless expressly so stated. You agree to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

9. You agree to sign such agreements or documents as we may require to effect the terms and conditions of payments shown in this Agreement.

10. Payoff information shown on page 1 of this Agreement is provided by you and/or your lienholder. Should the actual payoff(s) be less, we will refund the difference to you. If the payoff(s) is more, you agree to remit the difference to us within three business days of notification of the difference.

11. This paragraph applies if Lessee is leasing the Vehicle from Dealer. Dealer agrees to deliver the Vehicle to Lessee on the date this Agreement is signed by Dealer and Lessee. Lessee understands that it may take a few days for Dealer to verify Lessee's credit and to obtain lease financing directly from the third party lessor whose lease documents Dealer has had Lessee sign (the "Lessor") or, if Lessee signed a lease agreement with Dealer, to assign the lease agreement to a third party lessor. Lessee agrees that Dealer has 14 days after the date on which Lessee takes possession of the Vehicle to obtain lease financing from the Lessor or to assign the lease agreement. If Dealer is unable to obtain financing from the Lessor, or to assign the lease agreement to any one of the leasing companies with whom the Dealer regularly does business within this period of time, Lessee or Dealer may cancel the lease of the Vehicle. If the lease is canceled, the Lessor's loan documents or the lease agreement Lessee has signed will be null and void and of no effect. This limited right to cancel will end at the earlier of (i) the date Dealer obtains financing from the Lessor or assign the lease agreement and (ii) 14 days after the date on which Lessee takes possession of the Vehicle. If Dealer does not obtain financing from the Lessor or assign the lease agreement within the time described above, and Lessee or Dealer cancel the lease as provided above, Lessee must return the Vehicle to Dealer immediately in the same condition as when delivered to Lessee, reasonable wear and tear excepted. Lessee agrees to pay Dealer the fair market value of damage to, excessive wear and tear on or loss of the Vehicle occurring between the date Lessee takes possession of the Vehicle and the date Lessee returns the Vehicle to Dealer custody and to hold Dealer harmless from any expenses, costs and fees arising out of any act pertaining to the operation of the Vehicle while it is in Lessee's possession. If the Vehicle is immobilized or impounded while in Lessee's possession, Lessee agrees to do whatever is necessary to ensure the Vehicle's return to Dealer. If Lessee does not return the Vehicle immediately, Lessee will be liable for all expenses incurred by Dealer in taking the Vehicle from Lessee. If Lessee fails to return the Vehicle, Dealer may use any legal means to take it back. If, within 14 days of the date Lessee takes possession of the Vehicle, Dealer sends notice to Lessee by first class mail that financing is unavailable, Lessee is liable to Dealer for a reasonable charge per mile for the use of the Vehicle. If Lessee returns the Vehicle within five days of the mailing of the notice, Dealer may charge Lessee for miles driven during the first 14 days that Lessee had possession of the Vehicle. If Lessee does not return the Vehicle within five days of the mailing of the notice. Dealer may charge Lessee for all miles driven while Lessee has possession of the Vehicle. While the Vehicle is in Lessee's possession, all terms of this Agreement and the lease, including those relating to use of the Vehicle, shall be in full force, except that liability, collision, and comprehensive insurance on the Vehicle shall be provided by Dealer's insurance policy until this Agreement and the lease are no longer subject to rescission under this paragraph. Afterward, the Vehicle shall be covered by the Lessee's insurance policy. To the extent not prohibited by law, Lessee must pay all reasonable costs for repair of any damage to the Vehicle not covered by Dealer's insurance until the Vehicle is returned to Dealer.

12. We may assist in submitting credit applications to third parties. Unless we have committed to do so in writing, we will not lend you money or finance this transaction regardless of any notation to the contrary on any other document. No agent, employee or manager of ours can change this policy.

13. In the event that any of the terms and conditions of this Agreement are inconsistent with the terms and conditions of any lease agreement between Lessee and Dealer, other than those in paragraph 11 above the terms of such lease agreement shall apply.

14. Any warranty information will be provided to you separately.

15. You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

16. IT IS LESSEE'S RESPONSIBILITY TO OBTAIN INSURANCE ON THE VEHICLE. Dealer may request insurance information from Lessee in order to register the Vehicle with the Division of Motor Vehicles (DMV) or for verifying insurance coverage. Dealer's request for insurance information does not constitute an agreement to transfer or obtain insurance coverage on the Vehicle. By signing this agreement, except as otherwise provided in paragraph 11 above, Lessee covenants and agrees that Lessee has obtained, or will obtain, before the Vehicle is driven by anyone, insurance on the Vehicle.

17. EACH PARTY HERETO IRREVOCABLY, AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY OTHER DOCUMENT RELATED HERETO.

18. USED CAR BUYERS GUIDE: THE INFORMATION ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW YOU SEE OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

19. Miscellaneous Issues: * The agreed upon Trade-In Allowance(s) indicated in this Agreement may not necessarily represent the Actual Cash Value. * Dealer will maintain a security interest in the vehicle being sold and the Lessee grants Dealer a security interest in the trade-in(s) until the Adjusted or Net Capitalized Cost has been paid to Dealer.
* Lessee may not assign this Agreement without the written consent of Dealer. *
Lessee acknowledges that this transaction occurred in the State of New York and New York law will control in any disputes regarding this Agreement. * Lessee agrees that he will not export this vehicle and that it is intended for use in the United States.

20. A BRANDED VEHICLE IS ONE THAT STATES ON THE CERTIFICATE OF TITLE ONE OF THE FOLLOWING BRANDS (RECONSTRUCTED, NON-USA-STD., EXCEEDS MECHANICAL LIMITS, NOT ACTUAL MILEAGE OR WARRANTY NON-CONFORMITY.) SUCH BRANDED TITLES AFFECT THE TRADE-IN PRICE OR THE ACCEPTANCE OF THE VEHICLE AS A TRADE-IN. I HEREBY STATE THAT THE INFORMATION ON PAGE 1 OF THIS AGREEMENT REGARDING TRADE-IN VEHICLE IS ACCURATE.

21. NYS EV Rebate (when applicable): I agree to reimburse the dealer the full amount of the rebate if it is discovered that I provided false or inaccurate information that results in the application being denied.

**LAW FORM NO. LAWNY-LOARB22** (Rev 3/22)
© 2021 The Reynolds and Reynolds Company
Lessee Initials: R.M   Co-Lessee Initials: N/A   Page 3 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO EQUIPMENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, lease or condition of this Vehicle, this Lease Order or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease Order) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Dealer/Lessor named on page 1 of this Lease Order is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease Order was executed. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee in accordance with the rules and procedures of the chosen arbitration organization. If the rules of the chosen arbitration organization do not specify how fees must be allocated, we will pay the filing, administration, service or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law requires us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control.

Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Lease Order. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.



LAW FORM NO. LAWNY-LOARB22  Lessee Initials: R-M   Co-Lessee Initials: N/A   Page 4 of 4

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.